# EXHIBIT A

1  **NICHOLAS & TOMASEVIC, LLP**
   Craig M. Nicholas (SBN 178444)
2  Shaun Markley (SBN 291785)
   Jake Schulte (SBN 293733)
3  225 Broadway, 19th Floor
   San Diego, California 92101
4  Tel: (619) 325-0492
   Fax: (619) 325-0496
5  Email: cnicholas@nicholaslaw.org
   Email: smarkley@nicholaslaw.org
6  Email: jschulte@nicholaslaw.org

7  **GLICK LAW GROUP, PC**
   Noam Glick (SBN 251582)
8  225 Broadway, 19th Floor
   San Diego, California 92101
9  Tel: (619) 382-3400
   Fax: (619) 393-0154
10 Email: noam@glicklawgroup.com

11 Attorneys for Plaintiff,
   ALLISON DEWSE

12

13              **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15 ALLISON DEWSE, an individual, on      CASE NO.: 3:22-cv-00013-BEN-JLB
   behalf of herself, and on behalf of
16 others similarly situated;            **FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

17            Plaintiff,                 **(1)  FAILURE TO PROPERLY PAY**
              vs.                              **OVERTIME WAGES;**
18
                                         **(1)(2) FAILURE TO PROPERLY PAY**
19 ALBERTSONS COMPANIES, INC., a              **MEAL/REST PREMIUM PAY;**
   Delaware corporation,; THE VONS
20 COMPANIES, INC.; and DOES 12-         **(2)(3) FAILURE TO TIMELY PAY**
   100, inclusive;                            **WAGES WHEN DUE;**
21
              Defendants.               **(3)(4) FAILURE TO PROVIDE**
22                                             **ACCURATE ITEMIZED WAGE**
                                               **STATEMENTS;**
23
                                         **(4)(5) VIOLATON OF CALIFORNIA'S**
24                                             **UCL;**

25                                       **(5)(6) FAILURE TO REIMBURSE**
                                               **EXPENSES; and**
26
                                         **(6)(7) UNDERPAID WAGES.**
27
                                         **DEMAND FOR JURY TRIAL.**
28

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3    Plaintiff Allison Dewse ("Plaintiff") brings this action against Defendant

4    Albertsons Companies, Inc. ("Albertsons" or "Defendant"), on behalf of herself and

5    all others similarly situated. Plaintiff alleges on information and belief as follows:

6                            **I.    INTRODUCTION**

7        1.    To disincentivize working non-exempt employees over 8 hours in a day

8    or 40 in a week, and to ensure workers are fully compensated for their extra labor,

9    California requires employers to pay overtime at one and one-half times the worker's

10   "regular rate." *See* Labor Code § 510 and Wage Order 7, 3(A). The regular rate is not

11   straight time rate (i.e., his or her normal hourly wage rate). Instead, the regular rate

12   changes from pay period to pay period and accounts for non-hourly compensation like

13   incentive payments. The per-hour value of non-hourly pay must be determined so that

14   the employee's regular rate of pay—and, derivatively, the employee's overtime pay

15   rate—reflects all the various forms of regular compensation that the employee earned

16   in the relevant pay period. *See Alvarado v. Dart Container Corp. of California* (2018)

17   4 Cal. 5th 542, 554, and *see* California's Division of Labor Standards Enforcement

18   ("DLSE") Enforcement Policies and Interpretations Manual (2002), § 49.1.2 (defining

19   the "regular rate").

20       2.    In violation of these rules, At the outset of the pandemic, like many

21   employers of essential workers, Albertsons began incentivizing its workforce, and

22   potential employees, with "APPRECIATION PAY"— usually $2.00 of additional

23   compensation for every hour worked during the height of the pandemic.  Despite the

24   clear mandate in California to pay overtime at employees' "regular rates" and not their

25   straight time hourly rates, Albertsons failed to account for its appreciation pay

26   program when calculating the regular rate for purposes of paying overtime wages.

27       3.2.    Albertsons also fails to properly pay overtime wages to employees

28   receiving shift differential pay.  Albertsons pays premium compensation for working

1  undesirable shifts (*i.e.*, Sundays, holidays, first and second shift), but much of the
2  work week is not covered by these premiums. With this form of pay, Albertsons
3  incentivizes employees with extra compensation, typically an additional $0.50 per
4  hour. , for working undesirable shifts (e.g., Sundays, holidays, outside of regular
5  business hours). Contrary to California law, however, Albertsons does not sufficiently
6  adjust the regular rate, by taking the weighted average of the multiple pay forms,
7  resulting in underpayment of overtime wages. Specifically, Albertsons does not take
8  the weighted average of the multiple pay forms (i.e., standard hourly rate and shift
9  differential pay), which results in underpayment of overtime wages Albertsons uses
10  the federal formula to incorporate shift differential pay into its employees' regular
11  rates. This formula attempts to arrive at the per hour value of the bonus by (1) diving
12  the shift differential pay by *all hours worked*, and (2) multiplying that value by .5.
13  However, under the California formula, Albertsons should (1) divide the shift
14  differential pay by *regular hours worked*, and (2) multiply that value by 1.5.

15      4.3.    Like the hundreds of other non-exempt hourly employees working for
16  Albertsons since the start of pandemic, Plaintiff worked overtime during pay periods
17  that she also received appreciation pay with no corresponding increase to her regular
18  rate to account for the additional hourly pay. Further, during the relevant statutory
19  period, Plaintiff worked overtime during pay periods where she received shift
20  differential pay. Like with appreciation pay, Albertsons failed to adequately increase
21  Plaintiff's regular rate to account for shift differential pay. Further, Albertsons
22  miscalculates the regular rate when paying employees their owed premium pay for
23  missed, late or short meal or rest periods. Employers who fail to provide a meal or
24  rest period in compliance with California law must pay a one-hour premium at the
25  employee's regular rate of pay. Albertsons attempts to do this, but does so, once again,
26  at the wrong rate of pay. Yet liLike the shift differential pay, Albertsons miscalculates
27  the regular rate of pay when it pays meal premiums, resulting in underpayment of
28  these penalties.

5.4.    These practices robbed Plaintiff and her fellow employees of owed overtime overtime wages and meal and/or rest premium pay. It also meant means that Albertsons incorrectly listed pay rates and total earnings on these individuals' wage statements and failed to pay them all wages due upon separation. This same conduct also violates California's Unfair Competition ("UCL") law, which prohibits unfair or illegal business practices.

6.5.    Still further, despite requiring Plaintiff and her fellow employees to purchase personal protective equipment ("PPE") during the pandemic, Albertsons failed to reimburse these purchases.  Albertsons must reimburse Plaintiff and her fellow employees for their reasonably incurred business expenses bought at Albertsons' behest for purposes of keeping its employees and customers safe.

7.6.    Lastly, Plaintiff, on her own, seeks unpaid wages stemming from Albertson's s' failure to properly list her job title on her paystub during her first few months of her employment, resulting in Plaintiff getting paid less due to an incorrect (lower) hourly rate being misapplied.

8.7.    Defendant's employment practices are in violation of the California's Labor Code, Code of Regulations, Industrial Wage Commission ("IWC") Wage Orders, Division of Labor Standards Enforcement ("DLSE") policies, and UCL. At the appropriate time, Plaintiff plans to pursue the same conduct under California's Private Attorneys General Act ("PAGA"), Cal. Labor Code Sections 2698, *et seq*.

9.8.    Plaintiff, on behalf of herself and her fellow non-exempt employees who fell victim to the above-mentioned employment practices hereby seek all back-pay, unpaid wages, penalties, liquidated damages, interest, and all other remedies that they are entitled to by law.

//

//

//

## II.    JURISDICTION AND VENUE

10.9.  This Court has subject matter jurisdiction ~~to hear this case because monetary damages and restitution sought herein resulting from Albertsons' conduct exceeds the jurisdictional minimum of this Superior Court~~because Defendants removed the case under CAFA.

11.10. Venue is proper in this judicial district because ~~, pursuant to California Code of Civil Procedure section 395, as~~ Albertsons conducts significant business in San Diego County and the acts complained of were carried out, in significant part, in this County.

### III.    PARTIES

12.11. Plaintiff is, and at all times herein mentioned was, an individual residing in the County of San Diego, California.  From approximately December 2019 through November 2020, Albertsons employed Plaintiff as a non-exempt, full-time employee, specializing in cake decoration, at a Vons grocery store, located at 1201 Avocado Ave., El Cajon, California 92020.

12.    Albertsons is, and at all times mentioned was, a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in Boise, Idaho. Albertsons employs hundreds and possibly thousands of non-exempt employees in California and does substantial business in this State and in this County. "Albertsons . . . is one of the largest food and drug retailers in the United States, with a strong local presence and national scale. [It operates using an] omni-channel approach. . . ." https://investor.albertsonscompanies.com/corporate-profile/default.aspx. This approach is carried out through Albertsons' "Company Banner" stores like Vons, Safeway, Pavilions, and, of course, Albertsons. All in all, it has over 2,200 retail locations and does $70 billion in annual sales with nearly 300,000 workers across the United States. https://s25.q4cdn.com/593003593/files/doc_financials/2021/q3/ABSCos_Company-Fact-Sheet_Q3-2021_011122.pdf. Albertsons initiates and controls the forms of wages the workers at its stores receive and it issues their annual W2s to them.

1      13.    Vons Companies, Inc. is a banner store of Albertsons and is also a

2  defendant in this case.

3      14.    Plaintiff does not know the true names and capacities of defendants sued

4  as DOES 1 2 through 100, inclusive, and therefore sues them by fictitious names.

5  Plaintiff is informed and believes DOES 1 2 through 100, inclusive, are in some way

6  responsible for the events and the employees' damages described in this Complaint.

7  Plaintiff will seek leave to amend this Complaint when the true names and capacities

8  of these defendants have been ascertained.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   GENERAL ALLEGATIONS

**A.   Albertsons Fails to Properly Adjust the Regular Rate When Calculating Overtime Wages to Account for Shift Differential Pay, Robbing Employees of Required Overtime Wages**

15.   As set forth above in the Introduction, around March 2020 through June 2020, Albertsons issued "appreciation pay" to non-exempt workers. These payments were additional hourly compensation, usually $2 per hour worked. They showed up on wage statements as "APPRECIATION PAY," "APPRECPAY," or similar titles.

16.   Albertsons issued these payments in recognition of the additional risk that employees undertook working in an essential industry during a pandemic where their lives were at risk. Albertsons also issued these payments to attract, retain, and incentivize employees in a competitive labor market. Non-exempt Albertsons employees expected these wages weekly, and they were paid pursuant to either a formal written plan or an implied promise to continue the payments so long as the workers continued working during the pandemic. These bonuses were announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain employed by Albertsons. Such payments must be included in the regular rate.

15.   Albertsons also incentivizes employees with extra compensation in the form of shift differently differential pay, typically an additional $0.50 per hour, for working undesirable shifts (e.g., Sundays, holidays, outside of regular business hours). Like with appreciation payYet, Albertsons fails to properly pay overtime wages to employees receiving shift differential pay during the same pay period.  Albertsons does not properly adjust the regular rate, by taking the weighted average of the multiple pay forms (i.e., standard hourly rate and shift differential pay)erroneously uses the federal formula for including shift differential pay in employees' regular rate rather than the California formula,. This which results in underpayment of overtime wages.

17.

18.   Albertsons' employees like Plaintiff worked overtime during the same pay periods that they received appreciation pay.

19.16.Albertsons' employees like Plaintiff received shift differential pay in the same pay periods that they worked overtime.

17.   Albertsons failed to adjust Plaintiff's and similarly situated employees' regular rates, to fully and properly account for incentive payments and shift differential pay, during pay periods where these employees worked overtime.

**B.    Albertsons Fails to Properly Adjust the Regular Rate When Calculating Owed Meal and Rest Premium Pay**

18.    Meal and rest obligations are set forth in Labor Code sections 226.7 and 512 as well as Wage Order 7, Cal. Code Regs. tit. 8, § 11070 at sections 10-12.

19.    Meal and rest premium wages for missed meal and rest breaks as well as reporting time wages are recoverable "wages" under Labor Code sections 1194 and 218, among other sections.

20.    California law requires meal periods for employees working shifts greater than five (5) hours and greater than ten (10) hours. An employer may not employ someone for a shift of more than five (5) hours without providing him or her with a meal period of not less than thirty (30) minutes or for a shift of more than ten (10) hours without providing him or her with a second meal period of not less than thirty (30) minutes. To provide a compliant meal period, an employer must relieve its employee of all duties, relinquish control over his/her activities, permit him/her a reasonable opportunity to take an uninterrupted 30–minute break, and not impede or discourage him/her from doing so.

21.    Albertsons regularly had Plaintiff and other non-exempt employees work shift greater than 5 or 10 hours triggering California meal break obligations.

22.    Albertsons recognizes that meal periods will not always occur according to its policies. Where Albertsons is not able to timely relieve an employee of duties and provide a reasonable opportunity to take an uninterrupted, duty-free, uncontrolled meal or rest period consistent with its policies, in some instances, it pays employees one hour of pay. Those payments are at issue in this case.

23.    Specifically, when business reasons like its employees assisting customers or completing necessary work as instructed by management interfere with employees' ability to timely take uninterrupted meal periods, and the same is reflected in employees' time records (e.g. a missed, late or short meal period), Albertsons has a decision to make – dispute that a meal period was timely made available but

1  voluntarily waived, or pay a premium payment. Albertsons elects to make premium
2  wage payments in many instances and those instances are at issue in this case.

3      24.    While Albertsons properly elects to make premium meal and/or rest
4  period payments in some instances, it pays these premium wages at the wrong rate.
5  Specifically, Albertsons calculates the regular rate for meal/rest premiums using the
6  incorrect "federal method" – in which Albertsons divides employees' compensation
7  by *all hours* worked – when it should divide by non-overtime hours. Using Albertsons
8  method, the regular rate falls with each hour of overtime worked, which the California
9  Supreme Court has expressly found unlawful in *Alvarado v. Dart Container Corp. of*
10  *California*, 4 Cal. 5th 542, 554 (2018).

11      25.    Albertsons' employees like Plaintiff received meal/rest premium pay in
12  the same pay periods that they worked overtime.

13      20.26. Albertsons failed to correctly adjust Plaintiff's and similarly situated
14  employees' regular rates, during pay periods where these employees received
15  meal/rest premiums.

16      **B̶C.    Albertsons Fails to Timely Pay Wages**

17      21.    Plaintiff's employment ended with Albertsons on or around November
18  2020.  Other employees have likewise separated from Albertsons' employ during the
19  relevant statutory period. The above-mentioned failure to pay wages means that
20  Albertsons failed to pay wages to Plaintiff and her fellow terminated employees that
21  were due and owing upon separation.

22      22.27. / / /

23      **C̶D.    Albertsons Fails to Provide Complaint Pay Stubs**

24      23.28. Albertsons fails to provide Plaintiff and similarly situated employees
25  with accurate itemized wage statements at the end of each pay period.  Namely,
26  Albertsons does not provide wage statements showing accurate "hourly rates in effect
27  during the pay period and the corresponding number of hours worked at each hourly
28  rate." Labor Code, § 226.

24.29. In addition, Albertsons' wage statements fail to accurately reflect overtime pay, gross wages, and net wages as a result of the above-mentioned violations of California law resulting in underpaid wages. *Id.*

### ~~D~~E.   Albertsons Fails to Reimburse Business Expenses

25.30. Albertsons mandated that Plaintiff and other non-exempt employees purchase personal protective equipment ("PPE") during the pandemic.   Yet, Albertsons fails to reimburse employees for their purchases despite, oftentimes, being presented with receipts.   Albertsons must reimburse Plaintiff and her fellow employees for their business expenses incurred at Albertsons' own direction for purposes of keeping employees and customers safe during a pandemic.

### ~~E~~F.   Albertsons Owes Plaintiff Additional Wages

26.31. Albertsons underpaid Plaintiff near the start of her employment. Specifically, Albertsons failed to properly list Plaintiff's job title on her paystub (Clerk instead of her actual job title, Cake Decorator), resulting in Plaintiff getting paid less due to an incorrect (lower) hourly rate being misapplied.

## V.    CLASS ALLEGATIONS

27.32. Pursuant ~~Plaintiff brings this action individually, and as a class action, pursuant to~~ to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of herself and all other similarly situated Class Members. ~~California Code of Civil Procedure section 382.~~

28.33. Plaintiff is a member of all classes defined below (collectively, "the Classes").

### ~~Appreciation Pay Class:~~

~~"All Defendant's non-exempt California employees who, in the four years prior to the filing of this complaint through the date of class certification, received appreciation pay (or similarly styled wages) during any pay period in which the employee also worked overtime hours."~~

~~///~~

**Shift Differential Pay Class:**

"All Defendant's non-exempt California employees who, in the four years prior to the filing of ~~this~~ Plaintiff's complaint through the date of class certification, received shift differential pay (or similarly styled wages) during any pay period in which the employee also worked overtime hours."

**Meal/Rest Premium Pay Class:**

"All Defendant's non-exempt California employees who, in the four years prior to the filing of ~~this~~Plaintiff's complaint through the date of class certification, received meal or rest premium pay (or similarly styled wages) during any pay period in which the employee also worked overtime hours."

**Former Employee Sub-Class:**

"All members of the Appreciation Pay Class and Shift Differential Pay Class who separated from employment at any time between three years prior to the filing of this complaint through the date of class certification."

**Reimbursement Class:**

"All Defendant's non-exempt California employees, who, since March 1, 2020 through the date of class certification, purchased personal protective equipment (or similar gear) for work purposes."

~~29.~~34. To the extent equitable or any other form of tolling operates to toll claims by the Classes against Defendant, the applicable statute of limitations or recovery period should be adjusted accordingly.

~~30.~~35. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Classes are defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with defendant and/or its officers

and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

31.36.***Numerosity***.  The members of the Classes are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Classes contain many hundreds if not thousands of members.  The precise number of class members is unknown to Plaintiff.  The true number of class members is known by Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

32.37.***Existence and Predominance of Common Questions of Law and Fact***. There exists a well-defined community of interest in the questions of law and fact presented by this controversy.  Common questions of law and fact exist as to all members of the respective Classes and predominate over any questions affecting only individual class members.  These common legal and factual questions include, but are not limited to, the following:

        a.    Whether Defendant failed to pay overtime wages at the correct rate of pay based on its appreciation pay wages;

        b.    Whether Defendant failed to pay overtime wages at the correct rate of pay based on its shift differential pay wages;

        c.    Whether Defendant failed to reimburse employees for their reasonably incurred business expenses;

        d.    Whether Defendant failed to timely pay wages and, relatedly whether it failed to pay required penalties for these late payments;

        e.    Whether Defendant's pay stubs accurately set forth rates of pay, gross, and net wages, among other things; and

        f.    Whether Defendant engaged in any unlawful, unfair, and/or fraudulent business practices or acts in violation of the UCL.

33.38.    ***Typicality***.    Plaintiff's claims are typical of the claims of the members of the Classes.  Plaintiff, like other members of the Classes, received appreciation pay and shift differential pay in the same pay periods that she worked overtime. Moreover, like other class members, Plaintiff did not receive all wages when due and did not receive required penalty payments for these late payments. Her wages statements also failed to accurately reflect all hourly rates and the correct amounts of pay for overtime.  Still further, Plaintiff did not receive reimbursement for her business expenses incurred during the pandemic.

34.39.    ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained counsel highly experienced in wage and hour class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Classes.

35.40.    ***Superiority*** (to the extent required).  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for the class members, on an individual basis, to obtain effective redress for the wrongs done to it.  Furthermore, even if class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

36.41.      In the alternative, the Classes may also be certified because: the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for Defendant.

37.42.      The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

38.43.      Defendant has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final declaratory relief with respect to the members of the Classes as a whole.

39.44.      Adequate notice can be given to class members directly using information maintained in Defendant's records or through notice by publication.

40.45. Damages may be calculated, in part, from the employee information maintained in Defendant's records (e.g., paystubs), so that the cost of administering a recovery for the Classes can be minimized.  In any event, the precise amount of damages available to Plaintiff and the other members of the Classes is not a barrier to class certification.

## VI.    FIRST CAUSE OF ACTION
### (FAILURE TO PROPERLY PAY OVERTIME WAGES)
### AGAINST DEFENDANT AND DOES 1-100
### BY PLAINTIFF ON BEHALF OF HERSELF AND
### THE APPRECIATION PAY CLASS AND SHIFT DIFFERENTIAL PAY CLASS

41.46. Plaintiff incorporates by reference each and every allegation contained above.

42.47. Plaintiff brings this claim individually and on behalf of the Appreciation Pay Class and Shift Differential Pay Class against Defendant.

43.48. As set forth above, Albertsons does not properly factor its appreciate pay or shift differential pay into the "regular rate" for purposes of paying overtime during

pay periods when its non-exempt employees worked overtime and received ~~appreciation pay and/or~~ shift differential pay. This results in a failure to pay sufficient overtime wages as required by California law. *See* Labor Code § 510 and Wage Order 7, 3(A); *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 554 (2018); and *see* DLSE) Enforcement Policies and Interpretations Manual (2002), § 49.1.2.

~~44.    Plaintiff received appreciation pay in the amount of $2 per hour for each hour she worked for Albertsons from roughly March 2020 through June 2020. On several occasions, including, but not limited to, pay periods ending on March 22, 2020, March 29, 2020, April 5, 2020, April 12, 2020, April 19, 2020, April 26, 2020, May 3, 2020, May 24, 2020, and June 7, 2020, Plaintiff worked overtime for Defendant, as reflected on her wage statements, during the same pay period that she received appreciation pay. However, Defendant failed to adjust Plaintiff's regular rate to account for these appreciation payments and instead compensated Plaintiff for overtime at her straight time (e.g., base) hourly rate. The same occurred for other members of the Appreciation Pay Class.~~

49.    Plaintiff ~~also~~ received differential shift pay, typically $0.50 of additional compensation per hour for each hour she worked a designated shift. On several occasions, including but not limited to, pay periods ending on August 20, 2020, and October 8, 2020, Plaintiff worked overtime for Defendant, as reflected on her wage statements, during the same pay period that she received shift differential pay. However, Defendant failed to sufficiently adjust Plaintiff's regular rate to account for the extra compensation derived from the shift differential pay. The same practice occurred for other members of the Shift Differential Pay Class.

~~45.~~

50.    Plaintiff, on behalf of herself and the ~~Appreciation Pay Class and~~ Shift Differential Pay Class, seeks all unpaid overtime wages, penalties, interest, costs, and attorneys' fees where allowable.

## VI.    SECOND CAUSE OF ACTION
### (FAILURE TO PROPERLY PAY MEAL/REST PREMIUM PAY)
### AGAINST DEFENDANT AND DOES 1-100
### BY PLAINTIFF ON BEHALF OF HERSELF AND
### THE MEAL/REST PREMIUM PAY CLASS

51.    Plaintiff incorporates by reference each and every allegation contained above.

52.    Plaintiff brings this claim individually and on behalf of Meal/Rest Premium Pay Class against Defendant.

53.    Plaintiff received meal/rest premium pay during the class period.  On multiple occasions, Defendant paid an owed meal premium to Plaintiff, as reflected on her wage statements, during the same pay period that she received overtime pay.  However, Defendant underpaid the meal/rest premium owed to Plaintiff by miscalculating the regular rate used to pay the premium.  Specifically, it calculated the regular rate using the "federal method" – in which Albertsons divides employees' compensation by *all hours* worked – when it should have divided by non-overtime hours.  This is unlawful under *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal. 5th 542.  The same practice occurred for other members of the Meal/Rest Premium Pay Class.

54.    Plaintiff, on behalf of herself and the Meal/Rest Premium Pay Class, seeks all unpaid overtime wages, penalties, interest, costs, and attorneys' fees where allowable.

## VII.    ~~SECOND~~ THIRD CAUSE OF ACTION
### (FAILURE TO PAY ALL WAGES WHEN DUE)
### AGAINST DEFENDANT AND DOES 1-100
### BY PLAINTIFF ON BEHALF OF HERSELF AND
### THE FORMER EMPLOYEE SUB-CLASS

~~1.~~55.  Plaintiff incorporates by reference each and every allegation contained above.

~~2.~~56.  Plaintiff brings this claim individually and on behalf of the Former Employee Sub-Class against Defendant.

3. 57.  Pursuant to California Labor Code section 201, unpaid wages are due upon separation.   Plaintiff's employment ended with Defendant on or around November 2020.  Other members of the Former Employee Sub-Class have likewise separated from Defendant's employ.

4. 58.  Defendant failed to pay, in the required amount of time, the earned and unpaid overtime wages of Plaintiff and other members of the Former Employee Sub-Class.

5. 59.  Pursuant to California Labor Code section 203, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

60.   Accordingly, Plaintiff and other discharged members of the Former Employee Sub-Class are entitled to recover waiting-time penalties under California Labor Code Section 203 in an amount equal to 30 times their daily wage following each termination of employment when they were not paid appropriately (as explained in detail above).

/ / /

/ / /

/ / /

1    ///

2    ///

3    ///

## VIII.    ~~THIRD~~ FOURTH CAUSE OF ACTION

**(FAILURE TO ISSUE PROPER WAGE STATEMENTS)
AGAINST DEFENDANT AND DOES 1-100
BY PLAINTIFF ON BEHALF OF HERSELF AND
THE ~~APPRECIATION PAY CLASS AND~~ SHIFT DIFFERENTIAL PAY
CLASS AND MEAL/REST PREMIUM PAY CLASS**

~~7.~~61.   Plaintiff incorporates by reference each and every allegation contained above.

~~8.~~62.   Plaintiff brings this claim individually and on behalf of the Appreciation Pay Class and Shift Differential Pay Class against Defendant.

~~9.~~63.   The purpose for California's wage statement requirement, Labor Code Sections 226, et seq., is to ensure the employees are able to determine whether or not they are being paid their wages in accordance with California law.

~~10.~~64.Defendant violated the above statute by failing to provide accurate and complete paystubs/wage statements.  Defendant's wage statements fail to accurately reflect overtime pay, gross wages, and net wages as a result of the above-mentioned violations of California law resulting in underpaid wages. They also reflect inaccurate hourly rates.

~~11.~~65.On an individual basis, Albertsons failed to properly list Plaintiff's job title on her paystub (Clerk instead of her actual job title, Cake Decorator) at the start of her employment, resulting in Plaintiff getting paid less due to an incorrect (lower) hourly rate being misapplied.  Plaintiff is entitled to recover her lost wages, which is a form of "all actual damages" recoverable under Labor Code Section 226.  *See Arredondo v. Delano Farms Co.* (E.D. Cal. 2014) 301 F.R.D. 493, 547.

66.    Plaintiff and the Appreciation Pay Class and Shift Differential Pay Class are entitled to recover applicable damages, penalties, attorneys' fees, and costs.

///

1   / / /

2   / / /

3   / / /

4   **IX.   ~~FOURTH~~ FIFTH CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA'S UCL)**

5   **AGAINST DEFENDANT AND DOES 1-100**
**BY PLAINTIFF ON BEHALF OF HERSELF AND THE CLASSES**

6

7   ~~13.~~67.Plaintiff incorporates by reference each and every allegation contained

8   above.

9   ~~14.~~68.Plaintiff brings this claim individually and on behalf of the Classes

10  against Defendant.

11  ~~15.~~69.California Business & Professions Code, Sections 17200, et seq.

12  ("UCL") prohibits any unlawful, unfair, deceptive, or fraudulent business practice and

13  provides for restitution of unpaid wages.

14  ~~16.~~70.Defendant committed and continues to commit unlawful business

15  practices within the meaning of California's UCL, including, but not limited to, failing

16  to: pay the full amount of overtime wages (for the Appreciation Pay Class and Shift

17  Differential Class), pay all wages due and owing upon separation (for the Former

18  Employee Sub-Class), and reimburse business expenses (for the Reimbursement

19  Class).

20  ~~17.~~71.The unlawful business practices described above have proximately

21  caused monetary damages to Plaintiff, the Classes, and to the general public.

22  ~~18.~~72.Pursuant to the UCL, Plaintiff and these Classes are entitled to restitution

23  of money or property acquired by Defendant by means of such business practices, in

24  amounts not yet known, but to be ascertained at trial.

25  ~~19.~~73.Plaintiff's success in this action will result in the enforcement of

26  important rights affecting the public interest by conferring a significant benefit upon

27  the general public.

28

20.74.Private enforcement of these rights is necessary as no public agency has pursued enforcement.  There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action. Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to the UCL and California Code of Civil Procedure section 1021.5.

## X.    FIFTH SIXTH CAUSE OF ACTION
### (FAILURE TO REIMBURSE EXPENSES)
### AGAINST DEFENDANT AND DOES 1-100
### BY PLAINTIFF ON BEHALF OF HERSELF AND THE REIMBURSEMENT CLASS

21.75.Plaintiff incorporates by reference each and every allegation contained above.

22.76.Plaintiff brings this claim individually and on behalf of the Reimbursement Class against Defendant.

23./ / /

24./ / /

25.77.Plaintiff and the Reimbursement Class incurred business expenses on Albertsons' behalf, namely personal protective equipment ("PPE"), or similar gear, bought during the pandemic for purposes of keeping employees and customers safe.

26.78.Labor Code section 2802 and California's Wage Orders require that employers reimburse employees for business expenses reasonably incurred. Albertsons failed to do so.

27.79.Plaintiff and the Reimbursement Class, therefore, have been damaged by Albertsons' failures in this respect in an amount to be proven at trial.

28.80.Plaintiff and the Reimbursement Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on Albertson's' violations.

## XI.    SIXTH SEVENTH CAUSE OF ACTION
### (UNDERPAID WAGES)
### AGAINST DEFENDANT AND DOES 1-100

**BY PLAINTIFF ONLY**

~~29.~~81. Plaintiff incorporates by reference each and every allegation contained above.

~~30.~~82. Plaintiff brings this claim on behalf of herself, individually, against Defendant.

~~31.~~83. Labor Code section 558 provides civil penalties for underpaying employees. Those penalties include "an amount sufficient to recover underpaid wages," which "shall be paid to the affected employee." Labor Code section 223 forbids the payment of a lower wage when a statute or contract requires an employer to maintain a designated wage scale. Labor Code section 1194 provides an individual, private right of action, to recover unpaid wages.

~~32.~~84. Albertsons underpaid Plaintiff at the start of her employment. Specifically, Albertsons failed to properly list Plaintiff's job title on her paystub (Clerk, instead of her actual job title, Cake Decorator), resulting in Plaintiff getting paid less due to an incorrect (lower) hourly rate being misapplied.

~~33.~~85. Prior to commencing her employment, Plaintiff had a written, oral, or implied contract with Albertsons to become a Cake Decorator and to be compensated at the starting rate for that position based on a collectively bargained, designated wage scale. However, Albertsons applied the wrong job title and hourly rate to Plaintiff's first several wage statements, resulting in underpaid wages.

~~34.~~86. Plaintiff seeks her underpaid wages, along with interest, costs, and attorneys' fees.

## XII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on her own behalf and on the behalf of those similarly situated, prays for judgment as follows:

1.    For an order certifying the Classes as described herein, appointing Plaintiff as a class representative, and her counsel as class counsel;

2.    For compensatory damages according to proof;

3.   For statutory damages, enhanced damages, liquidated damages, and penalties as permitted under California law;

4.   For pre-judgment and post-judgment interest where allowable;

5.   For injunctive relief, including public injunctive relief, as described herein;

6.   For restitution as described herein;

7.   For an order enjoining Defendant from any further acts and practices which violate the UCL;

8.   For costs of suit;

9.   For reasonable attorneys' fees and costs; and

10.  For such other relief as this Court may deem just and proper.

## XIII.  <u>REQUEST FOR JURY TRIAL</u>

Plaintiff hereby requests a Trial by Jury.

Respectfully submitted:

DATED:   March 7, 2022~~February 14, 2022February 13, 2022February 12, 2022~~ _____**NICHOLAS & TOMASEVIC, LLP**

By:   */s/    Shaun Markley*

Craig M. Nicholas (SBN 178444)
Shaun Markley (SBN 291785)
Jake Schulte (SBN 293733)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jschulte@nicholaslaw.org

Attorneys for Plaintiff,
ALLISON DEWSE